# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRESTON WAYNE WALTERS,** | : | |
| **Plaintiff** | : | |
| | : | No. 1:22-cv-01802 |
| v. | : | |
| | : | (Judge Kane) |
| **LAUREL HARRY, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 26.) For the reasons set forth below, the Court will grant Defendants' motion and afford Plaintiff a final opportunity to amend his pleading.[1]

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") and is currently incarcerated at State Correctional Institution Fayette in LaBelle, Pennsylvania. On November 10, 2022, while Plaintiff was incarcerated at State Correctional Institution Camp Hill ("SCI Camp Hill") in Camp Hill, Pennsylvania, he commenced the above-captioned action by filing a pro se complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated at SCI Camp Hill. (Doc. No. 1.) Plaintiff named, as Defendants, SCI Camp Hill and the following individuals, all of whom work at SCI Camp Hill: Superintendent Laurel Harry ("Harry"); Infirmary Unit Manager Lori Newsome ("Newsome"); Law Librarian Supervisor Criley ("Criley"); and Law Librarian Mr.

---

[1] Also before the Court are Plaintiff's various motions, which will be addressed herein. (Doc. Nos. 31, 34, 39, 40, 43.)

Schinbelly ("Schinbelly"). (Id. at 1–2); see also (Doc. No. 25 at 1–3 (containing information for Defendants)). In addition to his complaint, Plaintiff also filed a certified motion for leave to proceed in forma pauperis and his prisoner trust fund account statement. (Doc. Nos. 2, 3.)

On January 4, 2023, the Court conducted an initial review of Plaintiff's complaint pursuant to the Prison Litigation Reform Act[2] and dismissed his complaint for failure to state a claim upon which relief could be granted. (Doc. Nos. 7, 8.) Specifically, the Court concluded that Plaintiff's complaint failed to: allege the personal involvement of Defendant Newsome; assert a theory of supervisory liability against Defendant Harry; and provide Defendants Criley and Schinbelly with fair notice of his claims against them and the specific grounds upon which those claims rest. (Id.) In addition, the Court concluded that Defendant SCI Camp Hill had Eleventh Amendment immunity and was not considered a "person" for purposes of Section 1983. (Id.) As such, the Court directed the Clerk of Court to terminate Defendant SCI Camp Hill from the caption of this case. (Id.) However, the Court granted Plaintiff leave to file an amended complaint. (Id.)

Following an extension of time (Doc. Nos. 10, 12), Plaintiff filed his amended complaint on January 30, 2023, naming Defendants Harry, Newsome, Schinbelly, and Criley as Defendants (Doc. No. 13). The Court deemed Plaintiff's amended complaint filed and directed the Clerk of Court to, inter alia, serve a copy of his amended complaint on Defendants. (Doc. No. 16.) In response to Plaintiff's amended complaint, Defendants filed a motion to dismiss and supporting brief. (Doc. Nos. 20, 21.) Plaintiff then filed a motion to amend his amended complaint, along with his proposed second amended complaint. (Doc. Nos. 22, 22-1.) On August 15, 2023, the

---

[2] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

Court granted Plaintiff's motion to amend and directed the Clerk of Court to file, as a new entry on the Court's docket, Plaintiff's proposed second amended complaint. (Doc. No. 24.) In addition, the Court directed the Clerk of Court to title that new entry as the second amended complaint. (Id.; Doc. No. 25.) Finally, the Court ordered Defendants Harry, Newsome, Schinbelly, and Criley to file a response to Plaintiff's second amended complaint in accordance with the Federal Rules of Civil Procedure. (Id.)

Thereafter, on August 29, 2023, Defendants filed a motion to dismiss Plaintiff's second amended complaint (Doc. No. 26), followed by a supporting brief (Doc. No. 32). In response, Plaintiff filed two (2) motions seeking leave to amend his second amended complaint, as well as motions seeking an extension of time to file a reply brief and a reply brief. (Doc. Nos. 31, 34, 39, 40, 43.)[3] As reflected by the Court's docket, Plaintiff did not file a brief in opposition to Defendants' motion to dismiss his amended complaint. However, on April 1, 2024, Plaintiff filed a "motion to take leave." (Doc. No. 43.) However, Plaintiff did not file a brief in support of his motion, as required by the Court's Local Rules.[4]

### B. Factual Background

In his second amended complaint, Plaintiff sets forth the following allegations. On June 14, 2020, Plaintiff received legal mail from his attorney, which stated that his "appeal" had been denied by the "Supreme Court" (Doc. No. 25 at 4, 15) and that his case was "now ripe for the

---

[3] In the accompanying Order, the Court will grant Plaintiff's motions seeking an extension of time to file a reply brief (Doc. Nos. 39, 40), and the Court will deem Plaintiff's reply brief (Doc. No. 41) timely filed.

[4] See M.D. Pa. L.R. 7.5 (stating, in pertinent part that: "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion[;]" and "[i]f a supporting brief is not filed within the time provided in this rule[,] the motion shall be deemed to be withdrawn"). As such, the Court will deem Plaintiff's "motion to take leave" (Doc. No. 43) withdrawn.

3

federal system, namely . . . a federal habeas corpus petition" (id. at 15). Plaintiff "made numerous attempts" to contact his attorney in order to have him file a federal habeas petition on his behalf, but his attorney never responded to him. (Id. at 4, 15.)

On an unspecified date, Plaintiff asked the infirmary block officer (i.e., "C.O. Tilden") when he could go to the law library, and the C.O. Tilden responded that Plaintiff was not allowed to leave the infirmary unless he was going to the medical department, a hospital, or a doctor's appointment. (Id. at 15.) C.O. Tilden also explained to Plaintiff, however, that he could write to Defendant Harry and ask for her permission to go to the law library. (Id. at 4, 15.) As a result, Plaintiff spoke with Defendant Harry and wrote her request slips. (Id. at 4.) Plaintiff seems to suggest that Defendant Harry responded by stating: if he got "a written paper from the courts[,]" she would "review it." (Id. at 16.)

Plaintiff knew that "the courts would not do this[,]" and because he was unable to retrieve any documents from his attorney, he spoke with C.O. Tilden, who told Plaintiff to write to Defendant Newsome and "ask her for her help." (Id.) On an unspecified date, Plaintiff saw Defendant Newsome in the infirmary and asked her why there were no legal resources available in the infirmary. (Id. at 5; id. at 16 (stating that he "asked her verbally for help" and explained that he needed "to file a federal habeas corpus, and need[ed] the law library to do research and learn, and . . . [to] receive help (legal aide) of the inmates who work [in] the law lib[rary]").) In response, Defendant Newsome directed Plaintiff to "put all this" in a request slip, which Plaintiff did, but he never received a response. (Id. at 5, 10, 16.)

Around this same (unidentified) period of time, Plaintiff was also writing to "the law library" requesting access to the law library and legal aide so that he could file "a federal habeas corpus[.]" (Id. at 16.) Plaintiff's requests were returned with the following responses: "You do

4

not qualify for legal assistance[;]" "law lib can not [sic] do legal research for inmates[;]" and the "law lib can not [sic] access computers for inmates[.]" (Id.) In addition to writing to the law library, Plaintiff "again" wrote to Defendant Harry on September 24, 2021, explaining that he is being denied access to the law library and legal aid. (Id. at 17.) Plaintiff states that Defendant Harry "returned [his] request stating, 'You may send a request to the lib. for copies/information." (Id.)

On February 11, 2022, Plaintiff spoke with another inmate who explained to Plaintiff that "staff" were violating his rights due to the lack of "law books/info, a legal aid" in the infirmary. (Id.) Plaintiff wrote a grievance on that same date. (Id.) Six (6) days later, on February 17, 2022, C.O. Tilden called Plaintiff to the front desk and wrote him a pass to go to the law library, stating: he was "the 1st person in Camp Hill history to get a pass to law lib." (Id.) Plaintiff was then "pushed" by an infirmary worker to the law library, at which time Plaintiff met with Defendant Schinbelly. (Id. at 18.) Defendant Schinbelly explained that Plaintiff's pass had been granted by the "medical deputy" and that he only had two (2) hours, so he "best make the most of it." (Id.) Plaintiff asked Defendant Schinbelly for help, and Defendant Schinbelly set Plaintiff up on a computer "under 'Federal Habeas Corpus[.]'" (Id.) However, Plaintiff did not know how to operate a computer, and he got frustrated; so, he asked Defendant Schinbelly for help. (Id.) Defendant Schinbelly explained that he was not allowed to assist Plaintiff, but he went to the back shelves and brought out two (2) books, laying them on the table. (Id.) Plaintiff explained that he did not know what he was "lookin at or lookin for[.]" (Id.) Defendant Schinbelly then handed Plaintiff paper, which contained information regarding "forms for federal civil rights actions[.]" By then, however, it was time for Plaintiff to leave. (Id.)

5

Approximately three (3) weeks later, Plaintiff's "care physician" called him and stated: "I don't know what you did, or who you wrote, but a [sic] order from the top came down, [and] your [sic] being moved out of the infirmary." (Id.)  Plaintiff was moved to I-Block, which Plaintiff claims had "no handicap facilities." (Id.)  Plaintiff fell three (3) days later while attempting to shower.  (Id. (alleging that he fell on a "concrete curb" and hit his "neck on [his] wheelchair").

On March 16, 2022, Plaintiff was told to "pack up" because he was moving to K Block where he would have a handicap shower.  (Id. at 19.)  Plaintiff immediately wrote to the "law library" requesting time.  (Id.)  In addition, he spoke with an inmate on K Block who explained that his arrest was "illegal" and his affidavit of probable cause "was never signed by the issuing authority[.]" (Id.)  Plaintiff asserts that, if he had been granted permission to go to the law library, he could have "learned [and] there would be less issues of Judges stating/treating [his] federal habeas corpus as a P.C.R.A. and denying it due to being time barred." (Id.)  In connection with this assertion, Plaintiff states that, at the time filed his second amended complaint, an appeal was pending before the Pennsylvania Supreme Court ("280 MAL 2023").[5]

In connection with these allegations, Plaintiff asserts that he made each Defendant aware, either verbally or through his request slips and/or grievances, that the infirmary did not have a law library and that legal assistance, such as a legal aid, was not available to him while he was housed there.  (Id. at 8–11.)  Plaintiff further asserts that, despite Defendants being aware of these shortcomings, they failed to act.  (Id.)  And, as a result of their failures, Plaintiff claims that

---

[5] Although Plaintiff's second amended complaint does not provide any context for his appeal, the Court notes that his petition for allowance of appeal was summarily denied by the Pennsylvania Supreme Court on November 14, 2023.  See Commonwealth v. Walters, 307 A.3d 1200 (Pa. 2023).

6

Defendants violated his First Amendment rights by denying him access to the courts. (Id. at 8.) For relief, Plaintiff seeks "compensation" for the alleged violations of his federal constitutional rights. (Id.)[6]

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

---

[6] The Court understands Plaintiff's complaint as asserting only a First Amendment access-to-courts claim against Defendants. To the extent that Plaintiff seeks to assert any other claims under Section 1983 or elsewhere, he should clarify the legal and factual basis of such claims in his amended pleading, should he file one.

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

### III. DISCUSSION

#### A. Defendants' Motion to Dismiss

In their motion to dismiss and supporting brief, Defendants assert the following three (3) arguments: (1) Plaintiff's First Amendment access-to-courts claim should be dismissed because his second amended complaint fails to allege a constitutional violation; (2) Plaintiff's claims against Defendants Newsome and Criley should be dismissed because his second amended complaint does not allege how they were personally involved in any asserted violation of his constitutional rights; and (3) Plaintiff's claim against Defendant Harry should be dismissed because Plaintiff's second amended complaint does not assert a plausible theory of supervisory liability. (Doc. Nos. 26, 32.) The Court first addresses Plaintiff's First Amendment access-to-courts claim.

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts." See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)); see also Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n.17 (3d Cir. 2018) (explaining that, typically, in the prisoner context, the right is "framed as a due process right" (citations omitted)).

Generally speaking, access-to-courts claims fall into two (2) categories: forward-looking claims and backward-looking claims. See Christopher v. Harbury, 536 U.S. 403, 413–14 (2002). Forward-looking claims seek relief from "systemic official action" that "frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." See id. at 413. Thus, in these cases, the underlying cause of action "has not been lost for all time, . . . but only in the short term[,]" and the ultimate object of these sorts of access claims is to place the plaintiff in a

9

position to pursue the underlying cause of action "once the frustrating condition has been removed." See id.

Backward-looking claims seek relief for suits "that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." See id. at 413–14 (footnote omitted). As a result, "[t]hese cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." See id. at 414 (footnote and internal footnote omitted). The ultimate object of these sorts of access claims is not a judgment in a separate suit, "but simply the judgment in the access claim itself[.]" See id.

In both types of access claims, the justification is the same: "to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." See id. at 414–15. The Supreme Court's "cases rest on the recognition that the right is ancillary to the underlying [cause of action], without which a plaintiff cannot have suffered injury by being shut out of court." See id. at 415. Thus, in pursuing an access-to-courts claim, a plaintiff must point to an actual injury by "identify[ing] a nonfrivolous, arguable underlying [cause of action]" that is lost or that is being obstructed by the asserted denial of access to the courts. See id. (internal citation and quotation marks omitted).

Additionally, in the prison context, "the injury requirement is not satisfied by just any type of frustrated legal claim." See Lewis, 518 U.S. at 354. Instead, only claims that involve "direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of his confinement—could support an access-to-courts injury." See Rivera v. Monko, 37 F.4th 909, 921 (3d Cir. 2022) (citing Lewis, 518 U.S. at 355). As explained by the Supreme Court, "[i]mpairment of any other litigating capacity is simply one of the

incidental (and perfectly constitutional) consequences of conviction and incarceration." See Lewis, 518 U.S. at 355 (emphasis in original).

Here, the Court finds that Plaintiff's second amended complaint does not allege an actual injury—i.e., that he lost a chance to pursue or is currently being hindered from pursuing a nonfrivolous, arguable underlying claim. The Court further finds that Plaintiff's second amended complaint does not describe the nature of the nonfrivilous, arguable underlying claim well enough to show that it is "more than hope[.]" See Christopher, 536 U.S. at 415 (footnote omitted). In other words, Plaintiff's second amended complaint does not plead his access-to-courts claim in a manner that satisfies Rule 8(a) of the Federal Rules of Civil Procedure. Thus, although Plaintiff's second amended complaint sets forth numerous allegations to show that he was denied legal resources at SCI Camp Hill, including access to a law library and legal aid, his second amended complaint neither explains how he was injured by this denial nor alleges the potential meritoriousness of his underlying claim, which he allegedly lost a chance to pursue or is currently being prevented from pursuing.[7]

Thus, the Court agrees with Defendants that Plaintiff' second amended complaint fails to state a First Amendment access-to-courts claim upon which relief can be granted. See Christopher, 536 U.S. at 415 (explaining that, in pursuing an access-to-courts claim, a plaintiff must point to an actual injury by "identify[ing] a nonfrivolous, arguable underlying [cause of action]" that is lost or that is being obstructed by the asserted denial of access to the courts

---

[7] At most, Plaintiff's second amended complaint broadly and vaguely asserts that (1) he spoke with an inmate at SCI Camp Hill who explained to him that his arrest was "illegal" and his affidavit of probable cause "was never signed by the issuing authority" and that (2) Plaintiff has an appeal pending before the Pennsylvania Supreme Court (i.e., "280 MAL 2023"). (Doc. No. 25 at 19.) Again, however, these allegations do not describe Plaintiff's injury or the meritoriousness of his underlying cause of action.

(internal citation and quotation marks omitted)); Rivera v. Monko, 37 F.4th 909, 915 (3d Cir. 2022) (stating that "the actual injury requirement of the access-to-courts standard implicates a prisoner's standing to bring a claim and thus implicates our jurisdiction" (footnote, citations, and internal quotation marks omitted)). The Court will, therefore, grant Defendants' motion on this basis and dismiss Plaintiff's First Amendment access-to-courts claim for failure to state a claim upon which relief can be granted.

In light of this ruling, the Court need not reach Defendants' remaining arguments concerning whether Plaintiff's second amended complaint plausibly alleges the personal involvement of Defendants Newsome and Criley in the asserted violation of Plaintiff's First Amendment rights or whether Plaintiff's second amended complaint plausibly alleges a theory of supervisory liability against Defendant Harry. (Doc. No. 32 at 11–15.) As discussed below, the Court will ultimately grant Plaintiff a final opportunity to amend his pleading. Defendants are free to reassert such arguments, if necessary, after Plaintiff has filed his amended pleading.

B. **Leave to Amend**

Having concluded that Defendants' motion to dismiss Plaintiff's First Amendment access-to-courts claim should be granted, the next issue before the Court is whether Plaintiff should be granted leave to amend his second amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). However, the Court may deny leave to amend where there is "undue delay, bad

faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend would be futile or result in any apparent prejudice to Defendants. While there is no dispute that Plaintiff previously amended his pleading, this Memorandum and accompanying Order constitute the first occasion on which the Court has addressed the plausibility of Plaintiff's First Amendment access-to-courts claim. Because of that, the Court will grant Plaintiff's motions seeking leave to amend (Doc. No. 31, 34) to the limited extent that Plaintiff will be afforded a final opportunity to amend his pleading in accordance with the directives of this Memorandum and accompanying Order.

Plaintiff is advised that his third amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the complaint, amended complaint, second amended complaint, or any other document already filed. In addition, his third amended complaint shall set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. And, finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Plaintiff's second amended complaint. (Doc. No. 12.) An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania